UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LONG ISLAND HOUSING SERVICES, INC. and
FAIR HOUSING JUSTICE CENTER, INC.,

                Plaintiffs,

     v.

VILLAGE OF GREAT NECK PLAZA and
NASSAU COUNTY INDUSTRIAL
DEVELOPMENT AGENCY,

                Defendants.

No. 14-CV-3307(ADS)(AKT)

**CONSENT DECREE**
**(as to Village of Great Neck Plaza ONLY)**

**WHEREAS**, Plaintiffs Long Island Housing Services ("LIHS") and Fair Housing Justice Center ("FHJC") (collectively, "Plaintiffs"), initiated this action (the "Action") by filing their Complaint dated May 29, 2014 ("Complaint") in the United States District Court for the Eastern District of New York, naming the Village of Great Neck Plaza (the "Village") and the Nassau County Industrial Development Agency ("NCIDA") (collectively, "Defendants") as defendants;

**WHEREAS**, Plaintiffs alleged, *inter alia*, that the Village's enactment, enforcement, and application of certain provisions contained within Article XB of Section 225 of the Village Code applicable to multiple dwellings in the Village's C-2 zoning district (the "C-2 Affordable Housing Law"), including with respect to a newly constructed residential apartment building located in the Village at 255 Great Neck Road ("the Building"), constituted unlawful discrimination on the basis of race, age, and disability in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*, and applicable state and local laws;

**WHEREAS**, Plaintiffs sought declaratory and injunctive relief as well as damages and an award of attorneys' fees and costs;

1

WHEREAS, the Village filed an Answer to the Complaint on July 21, 2014 in which the Village denied the material allegations in the Complaint;

WHEREAS, on August 5, 2014, the Court stayed formal discovery and allowed Plaintiffs and Defendants to engage in an initial exchange of documents and to explore whether a negotiated resolution to the Action could be achieved;

WHEREAS, Plaintiffs and the Village, through counsel and various officials, appeared for in-person, Court-supervised settlement conferences on September 29, 2014, November 19, 2014, December 3, 2014, May 15, 2015, June 9, 2015, and July 2, 2015, in addition to several telephonic conferences with the Court and additional in-person meetings and telephone conferences among the parties;

WHEREAS, the Village continues to deny any wrongdoing, does not admit the allegations in the Complaint, and takes the position that neither this Agreement, nor anything contained therein, shall constitute or be construed to constitute an admission of liability by the Village with respect to any of Plaintiffs' claims or allegations, or an acknowledgement that there is any merit to such claims or allegations, or an admission that the Village has not complied with any applicable statute, all of which the Village continues to dispute;

WHEREAS, Plaintiffs and the Village have agreed on a joint resolution that will settle the litigation as to all controversies between them and further the goals set forth below;

WHEREAS, Plaintiffs and the Village now enter into this settlement agreement (the "Agreement") in order to further those goals;

NOW THEREFORE, it is hereby stipulated and agreed, by and among the Village and the plaintiffs (hereinafter sometimes referred to as the "Settling Parties"), and ordered by the

Court, that all claims of the Plaintiffs against the Village shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the terms and conditions hereinafter set forth.

## I.   TERM AND SCOPE OF AGREEMENT

1.     The effective date of the Agreement shall be the date the Court so-orders this Agreement ("Effective Date").

2.     The terms of this Agreement shall remain in effect until the "Termination Date," a term which shall mean the later of:

   a)     The date four (4) years from the Effective Date; or

   b)     The date on which the Village issues a certificate of occupancy for a fourteenth "replacement unit" as hereinafter defined.

3.     Unless otherwise specified, this Agreement shall be binding on the Village and all its elected and appointed officials, and employees, and on Plaintiffs, their successors, directors, and employees.

4.     The United States District Court for the Eastern District of New York will retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by either of the Plaintiffs.  The Settling Parties shall endeavor in good faith to informally resolve any differences regarding compliance and interpretation of this Agreement prior to the filing any motion with the Court to enforce the terms of this Agreement. To that end, Plaintiffs agree to provide the Village with written notice of any alleged noncompliance with this Agreement, and the Settling Parties agree to confer within thirty (30) days of the notice to discuss a resolution of the issues raised and a timetable to implement the resolution.  If the Settling Parties are unable to reach an agreement after engaging in this process, either of the Plaintiffs may file a motion with the Court to enforce this Agreement.

5.      By their signatures below, the Settling Parties jointly consent, pursuant to 28

U.S.C. § 636(c)(1), to the exercise of jurisdiction over the enforcement of this Agreement by the

United States Magistrate Judge to the extent necessary for the entry of this Agreement as an

order of the Court and  for any subsequent enforcement thereof; and to the entry of judgment in

this Action by the United States Magistrate Judge to the extent necessary to order the dismissal

of all claims alleged by Plaintiffs against the Village with prejudice as specified herein.

II.     **GENERAL TERMS**

6.      The Village shall comply fully with the federal Fair Housing Act, the

housing-related provisions of the New York State Human Rights Law, the Nassau County Open

Housing Law, and all other applicable local, state, and federal laws prohibiting housing

discrimination.

7.      The Village shall take no action whatsoever to retaliate against, coerce,

intimidate, threaten or interfere with Plaintiffs for filing this Action, for obtaining this Consent

Decree, and for otherwise aiding or encouraging any other person in the exercise or enjoyment of

any right protected by federal or state fair housing laws.

8.      During the term of this Consent Decree, the Village shall notify Plaintiffs of any

future proposals to amend, supplement or modify the C-2 Affordable Housing Law or to

otherwise enact, repeal, or change any Village laws relating to development of affordable

housing units ("AHUs") in the Village, including without limitation "replacement units" as

hereinafter defined and any other units whose creation entitles the developer to a density bonus.

Such notice shall be provided at least ten (10) days in advance of the initial public hearing

concerning any such proposal, by mailing a cover letter and a copy of the public hearing notice

in accordance with paragraph 45 below.  As used herein, an AHU shall mean any residential

apartment in the Village which meets the definition of "affordable workforce housing" set forth

in Section 699-a of the Long Island Workforce Housing Act, N.Y. General Municipal Law §§

699 *et seq* (the "Workforce Housing Act"). The Village shall provide Plaintiffs with an

opportunity to comment at the public hearing or to submit written comments on any proposal

covered by this Paragraph before the adoption or rejection of such proposal.

III.    **AFFORDABLE HOUSING LAW**

9.      During the term of this Agreement, the Village shall, except as otherwise

provided in this Agreement, maintain in effect those provisions of the C-2 Affordable Housing

Law set forth in Article XB of Section 225 of the Village Code that are intended to assist and to

incentivize the creation of affordable housing in the Village's C-2 Zoning District.

10.     Within sixty (60) days of the Effective Date, the Village shall commence the

process to amend the Village Code as described in this Section. Such amendments are subject to

such ordinary and regular reviews as may be required by applicable statute, including but not

limited to SEQRA review and to review by other governmental bodies or agencies such as the

Nassau County Planning Commission.

11.     The Village shall amend the C-2 Affordable Housing Law so that

a)      Age and residency preferences are eliminated;

b)      Except as hereinafter provided, the Village will have no involvement with
        the marketing, qualification of prospective tenants for, or leasing of,
        AHUs;

c)      The requirement that households eligible to rent or buy an affordable unit
        "must consist only of persons who are married, united in a legally
        recognized civil union, or otherwise connected by a family relationship,"

are subject to exceptions where necessary to provide a reasonable
accommodation for a person with a disability who lives with a home
health aide who is not connected by a family relationship; and

d) Occupancy requirements for AHUs contained in the C-2 Affordable
Housing Law are expressly subject to reasonable accommodations for
persons with disabilities (as defined under applicable law) as described
below.

12.   During the term of this Agreement, the Village shall not voluntarily amend, alter,
modify, or repeal, in whole or in part, the C-2 Affordable Housing Law to reduce the incentives
provided for the development of AHUs.

13..   The Village shall amend the Village Code so that up to a 20% density bonus and
the other bonuses and incentives currently provided for by Section 225-83.10 of the Village
Code shall be available to developers who propose to provide AHUs in the RT and RD zoning
districts of the Village, provided that (a) the percentage of AHUs in the proposed development
(calculated based on square footage) shall be at least equal to the proposed percentage density
bonus to be provided; and (b) households having income of no less than fifty percent (50%) and
no more than one hundred percent (100%) of Nassau-Suffolk Area Median Income ("AMI") as
calculated by the United States Department of Housing and Urban Development shall be eligible
to lease all AHUs in the proposed development.

14.   The Settling Parties acknowledge that the Village takes the position that the
provisions of the Workforce Housing Act apply to housing developments in the Village that
contain residential units that are leased as well as those which are available for sale.  To the
extent that the provisions of the revised C-2 Affordable Housing Law or the revised provisions in

6

the Village Code applicable to the RT and RD Zoning districts (as described in Paragraph 13 above) would result in the development of more AHUs in the Village than the provisions of the Workforce Housing Act, then the provisions of the Village Code shall apply in the C-2, RT and RD zoning districts.

IV.     REPLACEMENT UNITS

15.     As used throughout this Agreement, the term "replacement unit" shall mean any "AHU" in the Village for which the Village issues a certificate of occupancy at any time after the Effective Date and for which eligibility is restricted to households with household incomes of fifty percent (50%) to one hundred percent (100%) of Nassau-Suffolk AMI.

16.     In the event that the Village fails to issue building permits for the construction of at least seven (7) replacement units within four years after the Effective Date, then, for as long as this Agreement remains in effect thereafter, the Village shall waive, for developers proposing to create affordable housing in the Village, forty percent (40%) of the following categories of fees incurred or payments received by the Village that would otherwise be charged to such developers:

         a)     SEQRA consultant fees;

         b)     Advertising expenses;

         c)     Legal fees;

         d)     Engineering fees;

         e)     Fees for stenographic services;

         f)     Fees associated with conditional use permits; and

         g)     Variance fees.

17.     In the event that the Village issues building permits for the construction of at least seven (7) replacement units within four years after the Effective Date, but fails to issue building

permits for the construction of a total of at least fourteen (14) replacement units within six years after the Effective Date (inclusive of all permits for the construction of replacement units issued within a period of four years after the Effective Date), then the Village shall, for as long as this Agreement remains in effect thereafter, waive forty percent (40%) of the fees and payments referenced above in paragraph 17 for developers proposing to create affordable housing in the Village.

## V.    APARTMENTS IN THE BUILDING

18.    After the Effective Date, the Village shall undertake its best efforts to amend its regulatory agreements with the owner of the Building (the "Owner"), in order to include provisions that impose the following obligations on the Owner:

a)    Future rentals and lease renewals for affordable housing units in the Building will not be subject to any age or residency preferences;

b)    The Owner will adopt an equal housing opportunity policy substantially similar to the one attached hereto as Exhibit A, including a reasonable accommodation policy and a reasonable accommodation request form similar to the one attached as Exhibit B;

c)    The Owner will post fair housing posters substantially similar to those attached hereto as Exhibit C, issued by HUD and by New York State, in its rental office at the Building where it can readily be seen by members of the public;

d)    The Owner will use the HUD fair housing logo, pictured in Exhibit D hereto, on its website and in all marketing materials related to the Building; and

e)   Future marketing of any available affordable housing units in the Building will be undertaken either by the Owner or by a third-party entity that has experience in developing and implementing affirmative marketing plans for affordable housing, not the Village.  Such marketing shall include, among other methods, the Owner's website and other internet sites that are free for prospective tenants to access.  At the same time that the Owner posts information about an available affordable unit pursuant to this Paragraph, the Owner will provide written notice to the entities listed on Exhibit E of the rental availability in the Building and contact information that may be used by persons interested in inquiring about the availability; and

f)   The Owner will provide an annual certification to the Village that it has complied with its obligations under this Section and that future leasing of AHUs in the Building has been done in compliance with the revised C-2 Affordable Housing Law.  The Village may rely on such certification and will not be required to conduct an audit thereof.

19.   Failure of the Village to obtain such amendments to its regulatory agreements with the Owner after using its best efforts shall not be deemed a breach or default by the Village of its obligations under this Consent Decree, but may result in Plaintiffs' refusal to grant a release to the Owner.

20.   Nothing in this Consent Decree or in the amended regulatory agreements shall be deemed to prohibit the Owner from marketing affordable units in additional ways not described herein.

9

21.     Promptly after the regulatory agreements between the Village and the Owner are modified consistent with this Section and the Village provides Plaintiffs with copies of the modified agreements, Plaintiffs shall provide a release and covenant not to sue the Owner on any claim that was or could have been brought in this Action.

## VI.     FUTURE AFFORDABLE HOUSING DEVELOPMENT IN THE VILLAGE

22.     During the term of this Agreement, the Village shall not enter into any regulatory agreement or other agreement with any developer or landlord concerning the development of AHUs in the Village, including without limitation any agreement respecting the creation of replacement units or the creation of housing subject to the density bonus of the Workforce Housing Act, unless such agreement contains provisions imposing the following obligations on the developer and/or landlord:

a)     The developer or landlord is obligated to develop and provide the Village with a copy of its plan to market available affordable housing units in a manner reasonably calculated to reach persons served by:

i.     civic organizations and public agencies that serve non-white and low-income communities and clients, families with children, and people with disabilities; and

ii.     the Nassau County Section 8 housing voucher program;

b)     The developer or landlord shall adopt (or demonstrate that it already has in place) an equal housing opportunity policy substantially similar to the one attached hereto as Exhibit A, including a reasonable accommodation policy substantially similar to the one attached hereto as Exhibit B;

c)     The developer or landlord shall display fair housing posters substantially similar to those attached hereto as Exhibit C, issued by HUD and by New York State, in its rental office in a location where they can be readily seen by the public; and

d)     The developer or landlord shall use the HUD fair housing logo, pictured in Exhibit D hereto, on its website and in all marketing materials related to affordable housing in the Village.

23.     A developer or landlord covered by this Section may, in its discretion, contract with a third-party entity to develop and implement the obligations described in Paragraph 22. Any such third-party entity must have experience developing and implementing affirmative marketing plans for affordable housing. Without prejudice to any developer or landlord's retention of any other third-party marketing entity, the Settling Parties agree that Community Housing Innovations is qualified to develop and implement the marketing activities described in Paragraph 22.

24.     The Village shall support all qualified applications for financial assistance for the development of affordable housing in the Village that may be submitted to NCIDA, to Nassau County, or to state agencies, including for federal or state housing tax credits allocated or administered by the New York State Homes and Community Renewal agency, tax-exempt bonds, funding from the state affordable housing trust fund, Community Development Block Grant funds, tax exemptions, and other similar forms of financial support. As applicable, such support shall take the form of resolutions supporting the project enacted by the Village's Board of Trustees, letters of support from the Village, and other similar measures as may reasonably be requested by developers to submit qualified applications.

25.     Nothing contained in this Agreement shall be deemed to obligate the Village to provide direct financial support for developers to create affordable housing in the Village or to require the Village to support any proposal which does not meet the Village's zoning code or other applicable law.

26.     Nothing contained in this Agreement shall be deemed to prohibit the Village from making its support for a proposed affordable housing development contingent on the developer obtaining site control (e.g. land ownership, contract to purchase, or other similar indicia of control) and on generally applicable nondiscriminatory local zoning and land use requirements.

27.     The Village shall take reasonable steps to inform housing developers operating on Long Island about the provisions of the revised C-2 Affordable Housing Law and the revised provisions in the Village Code applicable to the RT and RD Zoning districts (as described in Paragraph 13 above), including without limitation the availability of density bonuses in certain zoning districts in the Village, by:

a)      Disseminating information about the revised C-2 Affordable Housing Law and the revised provisions in the Village Code applicable to the RT and RD Zoning districts to potential housing developers;

b)      Informing potential housing developers of the Village's interest in supporting qualified applications for government financial assistance for the development of affordable housing in the Village;

c)      Disseminating information to potential housing developers about Zoning Districts and geographic areas within the Village eligible for different types of incentives; and

     d)     Disseminating information to prospective housing developers about the existence of vacant land and other developable lots within each such Zoning District or geographic area which may be suitable for multi-family affordable housing or other opportunities for the development of multi-family affordable housing within the Village.

28.     Within sixty (60) days after the Village Code is amended in accordance with Section III of this Agreement, the Village shall (1) post the information described in the preceding Paragraph on its website and (2) circulate the information described in the preceding Paragraph by regular mail, in a reasonably accessible and readable form, to the entities listed in Exhibit F. This Paragraph does not limit the Village from undertaking other activities to inform housing developers of the opportunity to create affordable housing in the Village.

## VII.   FAIR HOUSING TRAINING AND COMPLIANCE

29.     The Village shall require all of the members of its Board of Trustees, its Mayor, and any additional employees, representatives, or agents with responsibility for planning, zoning, and other housing-related activities, exclusive of clerical personnel, to attend a half-day fair housing training session to be conducted by Plaintiffs.

30.     The training session described in this Section shall occur within Nassau County, at a place and time to be determined that is mutually convenient for Plaintiffs and for the Village, but in no event more than ninety (90) days after the Effective Date unless otherwise agreed to in writing by the Parties.

31.     The training session described in the preceding paragraph shall be at no cost to the Village beyond the payments described in Section VIII below. If the Village desires to schedule more than one training session with the Plaintiffs in order to accommodate the schedules of its

elected officials or employees, then it may do so, but at an additional cost of $1,500.00 per

training session, to be paid in advance to the Fair Housing Justice Center.

32.     The Village shall display fair housing posters substantially similar to those

attached hereto as Exhibit C, issued by HUD and by New York State, at its office in a location

where they can be readily seen by members of the public.

## VIII.   MONETARY RELIEF, DISMISSAL OF CLAIMS, AND RELEASES

33.     Within twenty-one (21) days after the Effective Date, the Village shall cause to be

delivered to the offices of Plaintiffs' counsel, a check from the Village's insurer for the sum of

two hundred thousand dollars ($200,000.00), payable to "Emery Celli Brinckerhoff & Abady,

LLP, as attorneys for Long Island Housing Services and Fair Housing Justice Center." Such

payment shall be in full settlement of all claims by Plaintiffs against the Village for damages of

any kind, including but not limited to compensatory damages, punitive damages, "diversion of

resources" damages, "frustration of mission damages," testing expenses, attorneys' fees and

litigation costs. The Village acknowledges that this sum is a compromised amount agreed upon

after negotiation between the Settling Parties and may not represent the total sum of damages,

attorneys' fees, and costs that Plaintiffs claim they may have incurred in connection with their

claims in the Action.

34.     Concurrently with the execution of this Agreement, the Village's attorneys will

deliver to ECBA a signed Stipulation and Order of Dismissal. The Settling Parties agree to

stipulate that dismissal will be with prejudice, but only as to the claims asserted by Plaintiffs

against the Village and any claims and affirmative defenses the Village may have asserted

against the Plaintiffs. Counsel for Plaintiffs will file the executed Stipulation and Order of

Dismissal with the Court within ten (10) business days after the Village has made the payment described in the preceding Paragraph.

35.     By entering into this Agreement and once the Village has caused payment to be made to the Plaintiffs pursuant to Paragraph 33, Plaintiffs fully and forever release, acquit, and forever discharge with prejudice, subject to the terms of this Agreement, the Village  and all its elected and appointed officials, employees, representatives, agents and attorneys, and insurers of the Village from any and all liability, claims for relief, or rights of action, of any kind or nature whatsoever arising from the allegations set forth or described in the Complaint in this action, whether known or unknown, including all claims for reasonable attorneys' fees and costs, provided however, that this release does not include any motion to enforce the terms of this Agreement that may accrue after the Effective Date.

36.     By entering into this Agreement, the Village fully and forever releases, acquits, and forever discharges with prejudice, subject to the terms of this Agreement, Plaintiffs and all their directors,  employees, agents, representatives, assigns, subsidiaries, successors in interest, and attorneys, from any and all liability, claims for relief, or rights of action, of any kind or nature whatsoever arising from the allegations against the Village set forth or described in the Complaint and Answers in this action, whether known or unknown, including all claims for reasonable attorneys' fees and costs.

## IX.    OTHER TERMS AND CONDITIONS

37.     During the term of this Agreement, the Village shall maintain appropriate written records of all activities and efforts it undertakes in order to comply with this Agreement.  No more than two times per year, Plaintiffs shall be entitled to inspect and copy, on reasonable written notice to the Village and with all copying costs borne by the Village, the following public

15

records pertaining to affordable housing within the Village and the Village's compliance with this Agreement: (a) minutes of meetings of the Village Trustees, (b) applications for residential development in the Village and (c) building permits and certificates of occupancy issued for AHUs and replacement units; (d) applications for site plan approval involving developments with AHUs; (e) applications for zoning variances involving developments with AHUS; (f) applications for building permits involving developments with AHUs; and (g) regulatory agreements and notices as described in Sections V and VI. In the event Plaintiffs seek to inspect any non-public material which is confidential or proprietary, then, prior to providing such material, the Settling Parties shall agree upon suitable provisions for the exchange, retention and return of such material.   Nothing herein shall be construed to allow plaintiffs to inspect or copy privileged material.

38.    This Consent Decree shall be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any party because such party drafted or requested such provision or this Consent Decree as a whole.

39.    This Consent Decree shall be administered, construed, and enforced according to federal law where applicable, and otherwise according to the laws of the State of New York.

40.    This Consent Decree shall constitute the entire agreement among the Parties hereto with respect to the subject matter of this Consent Decree and supersedes and replaces all prior negotiations, proposed agreements, consent orders, and agreements, whether written or unwritten, concerning such subject matter.

41.    The provisions, terms and conditions of this Consent Decree shall, when entered by the Court, be binding by and between Plaintiffs, their successors and assigns, and the Village, its successors and assigns, subject to the modification provisions contained in this Section.

42.     Except as expressly set forth herein, this  Consent Decree does not grant Plaintiffs or the Village any rights or privileges under law nor does it exempt them from any obligation or limitation imposed by law.

43.     If any provision in this Consent Decree is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Consent Decree will endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision will materially affect the intent of the Consent Decree.  The parties to this Consent Decree will consult and use their best efforts to agree upon a valid and enforceable provision that will be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Consent Decree.

44.     Plaintiffs and the Village, by written agreement, may modify the deadlines set forth above.  No amendments, changes, supplements or revisions to this Consent Decree shall be effective unless in writing and signed by all parties.

45.     All notices under this Consent Decree shall be sent by e-mail and U.S. Mail to the following:

> To the Village:
>
> 2 Gussack Plaza
> Great Neck, New York 11022
> Attn: Mayor Jean Celender
> Tel. No.: (516) 482-4500
> Fax No.: (516) 482-3503
> E-mail: mayorjean@greatneckplaza.net

With a copy to:
Richard J. Gabriele, Esq.
Westerman Ball Ederer Miller Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Tel.: 516-622-9200 ext. 320
Fax: 516-622-9212
E-mail: rgabriele@westermanllp.com

To LIHS:

Michelle Santantonio, Executive Director
Long Island Housing Services, Inc.
640 Johnson Avenue, Suite 8
Bohemia, New York, 11716
Tel.: 631-567-5111 ext. 316
Fax: 631-567-0160
E-mail: michelle@lifairhousing.org

To FHJC:

Fred Freiberg, Executive Director
Fair Housing Justice Center, Inc.
5 Hanover Square, 17th Floor
New York, NY 10004
Tel.: 212-400-8231
Fax: 212-400-8203
E-mail: ffreiberg@fairhousingjustice.org

The addresses and contact information set forth in this paragraph may be changed upon written

notice to all the Settling Parties in the manner set forth in this Paragraph.

46.     The parties to this Consent Decree expressly represent and warrant that they have

full legal capacity to enter into this Consent Decree, that they have carefully read and fully

understand this Agreement, that they have had the opportunity to review this Consent Decree

with their attorneys, and that they have executed this Consent Decree voluntarily, without duress,

coercion, or undue influence.

47.    This Consent Decree may be executed in any number of counterparts and each such counterpart will be deemed to be an original.  For purposes of executing or amending this Consent Decree, a document signed and transmitted by facsimile or email will be treated as an original document and have the same binding legal effect as an original signature on an original document.

THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.

AGREED TO BY THE PARTIES:

Dated: _September 18_, 2015          Dated: _Sept. 9_____, 2015

ON BEHALF OF PLAINTIFFS:             ON BEHALF OF VILLAGE :

EMERY CELLI BRINCKERHOFF & ABADY LLP   BLEAKLEY PLATT & SCHMIDT LLP

By: _____          By: _____
    Diane L. Houk                        James W. Glatthaar
    David Lebowitz                       One North Lexington Ave, 7th Floor
    600 Fifth Avenue, 10th Floor         White Plains, NY 10601
    New York, NY 10020                   Telephone: (914) 949-2700
    Telephone: (212) 7630-5000           Facsimile: (914) 683-6956
    Facsimile: (212) 763-5001            jwglatthaar@bpslaw.com
    dhouk@ecbalaw.com
    dlebowitz@ecbalaw.com

By: _____          By: _____
    Michelle Santantonio, Executive Director   Jean A. Celender, Mayor
    Long Island Housing Services, Inc.          Village of Great Neck Plaza

By: _____
    ~~Gene Capotto, President~~  Catherine Schiller
    Fair Housing Justice Center, Inc.   Secretary

SO ORDERED:

_____
A. KATHLEEN TOMLINSON
United States Magistrate Judge

20

<u>EXHIBIT A</u>

**EQUAL HOUSING OPPORTUNITY POLICY**

As part of our continuing effort to ensure compliance with federal, state, and local anti-discrimination laws, we would like to take this opportunity to remind you of our policies regarding equal housing opportunity.  It is important for all employees to review his or her own actions in light of these requirements and for everyone to keep in mind the importance of treating all persons equally.

It is the policy and practice of this company not to engage in or assist the efforts of others to engage in housing discrimination.  Consistent with that policy, we remind you that the anti-discrimination laws of the United States, New York State, and local laws are quite specific in the area of housing, and in conformance with those laws, you must not engage in any of the following conduct during the course of your work for this company:

1. Refuse to show, rent, negotiate for the rental of, or otherwise make unavailable or deny, housing to any person because of race, color, religion, creed,  sex/gender, familial status (having or expecting a child under 18), national origin, ethnicity, disability, marital status, age, sexual orientation, military status, or source of income (each a "prohibited basis");

2. Discriminate against any person in the terms, conditions or privileges of a rental or in the provision of services or facilities in connection therewith because of a prohibited basis;

3. Make any verbal or written statement with respect to the rental of housing that indicates any preference, limitation or discrimination concerning a prohibited basis, or any statement indicating an intention to make any such preference, limitation or discrimination;  and

4. Represent to any person because of a prohibited basis that any apartment is not available for inspection or rental when such apartment is in fact so available;

We are firmly committed to the goal of fair housing.  **You should understand that any violation of this Equal Housing Opportunity Policy will lead to discipline, up to and including discharge.**

<u>EXHIBIT B</u>

## REASONABLE ACCOMMODATION OR MODIFICATION POLICY
## AND REQUEST FORM

[INSERT NAME OF DEVELOPMENT/BUILDING] is committed to providing equal housing opportunity. As part of this commitment, we will modify our rules, policies, practices, and services to meet the needs of individuals with disabilities upon request if the accommodation requested is reasonable and necessary to allow the individual to fully use and enjoy residing in our community. We will also permit reasonable modifications of our physical premises if such modifications may be necessary to afford a disabled resident full enjoyment of the premises.

It is our policy to reject reasonable accommodation or modification requests only when they are not related to a disability-based need, impose an undue financial and administrative burden, or fundamentally alter the nature of the housing services we provide. In such case, we will discuss reasonable alternatives that may meet the requesting individual's needs.

### *Procedure for Making a Request*

Requests may be submitted in writing, preferably through the attached form. Fully describe the required accommodation or modification on the Reasonable Accommodation Request form. Please include any additional information that you believe would be useful in assisting us to evaluate the request. A request need not be submitted in writing nor be made using the attached form to be considered by us.

### *Verification and Documentation*

If your disability or disability-related need is not obvious, we may request that you provide verification that you have a disability-related need for the requested accommodation.

### *Providing Disability-Related Accommodations*

We will discuss your request with you.  If the request is approved, we will provide a letter explaining how and when the accommodation or modification can be provided.  If a request cannot be approved because it is an undue financial and administrative burden or because it would be a fundamental alteration of the services provided by us, then we will discuss alternative accommodations or modifications that may address your disability-related need.  If no alternative meets your disability-related the needs, or if you and [INSERT NAME OF DEVELOPMENT/BUILDING] cannot agree on a reasonable alternative, we will notify you of the denial in writing in a reasonable amount of time and will provide an opportunity for you to revise your request.

## Reasonable Accommodation or Modification Request

Name: _____

Address: _____

_____

Phone: _____

I am making this request on behalf of:_____

(Name of Person with Disability)

Please describe the reasonable accommodation or modification you are requesting and the disability-related reason for your request:

_____

_____

_____

_____

Date: _____   Signature: _____

This form, along with any additional information, should be submitted to:

### *[INSERT ADDRESS]*

If you have any questions, please contact _____ at _____

**For Office Use Only**

[ ]   Approved   Reason:_____

[ ]   Denied   _____

_____

<u>EXHIBIT C</u>

U. S. Department of Housing and Urban Development





EQUAL HOUSING
OPPORTUNITY

## We Do Business in Accordance With the Federal Fair Housing Law

(The Fair Housing Amendments Act of 1988)

---

## It is illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin

---

■ In the sale or rental of housing or residential lots

■ In advertising the sale or rental of housing

■ In the financing of housing

■ In the provision of real estate brokerage services

■ In the appraisal of housing

■ Blockbusting is also illegal

---

Anyone who feels he or she has been
discriminated against may file a complaint of
housing discrimination:
    1-800-669-9777 (Toll Free)
    1-800-927-9275 (TTY)
    www.hud.gov/fairhousing

U.S. Department of Housing and
Urban Development
Assistant Secretary for Fair Housing and
Equal Opportunity
Washington, D.C. 20410

---

Previous editions are obsolete

form HUD-928.1 (6/2011)

# HOUSING DISCRIMINATION IS SOMETIMES **BLATANT**, SOMETIMES SUBTLE, BUT ALWAYS UNLAWFUL.

Do you suspect you have been discriminated against because of your age, race, disability, familial status, or because you are a member of other protected classes? If you witness or experience discrimination, contact the New York State Division of Human Rights at 1-888-392-3644 or WWW.DHR.NY.GOV.

NEW YORK STATE DIVISION OF HUMAN RIGHTS

NY WORKS

This advertisement was made in collaboration by the NYS Division of Human Rights and U.S. Department of Housing and Urban Development.

<u>EXHIBIT D</u>

FAIR HOUSING LOGO



EQUAL HOUSING
OPPORTUNITY

## EXHIBIT E

### LIST OF ENTITIES TO RECEIVE NOTICE OF RENTAL AVAILABILITIES

1. Long Island Housing Services
   640 Johnson Ave #8, Bohemia, NY 11716

2. Community Development Corporation of Long Island, Rental Assistance Department
   2100 Middle Country Road, Centereach, New York 11720

3. Long Island Center for Independent Living
   3601 Hempstead Turnpike Suite 208, Levittown, NY 11756

4. Community Housing Innovations – Nassau County
   175 Fulton Avenue, #211B, Hempstead, NY 11550

5. Community Housing Innovations – Suffolk County
   55 Medford Avenue, Suite B, Patchogue, NY 11772

6. Economic Opportunity Commission of Nassau County
   281 Babylon Turnpike, Roosevelt, NY 11575

7. Hispanic Brotherhood of Rockville Centre
   59 Clinton Ave, Rockville Centre, NY 11570

8. Family and Children's Association
   100 East Old Country Road, Mineola, NY 11501

9. NAACP Brookhaven
   P.O. Box 621, Port Jefferson, NY 11776

10. NAACP Central Long Island
    P.O. Box 688, Amityville, NY 11701

11. NAACP Eastern Long Island
    P.O. Box 2699, Southampton, NY 11969

12. NAACP Freeport/Roosevelt
    P.O. Box 292, Roosevelt, NY 11575

13. NAACP Glen Cove
    P.O. Box 449, Glen Cove, NY 11542

14. NAACP Huntington
    P.O. Box 3044, Huntington Station, NY 11746

15. NAACP Islip Town
    P.O. Box 195, Bohemia, NY 11716

16. NAACP Hempstead
    P.O. Box 369, Hempstead, NY 11511

17. NAACP Lakeview
    P.O. Box 268, West Hempstead, NY 11552

18. NAACP Westbury
    P. O. Box 10602, Westbury, NY 11590

<u>EXHIBIT F</u>

## HOUSING DEVELOPERS TO RECEIVE NOTICE FROM VILLAGE

1. RXR Realty
   625 RXR Plaza, Uniondale, NY 11556

2. Renaissance Downtown Urban America
   9 Gerhard Road, Plainview, NY 11803

3. JPI/TDI
   3 West Main Street Suite 203, Irvington, NY 10533

4. The Klar Organization
   2580 Hempstead Turnpike, East Meadow, NY 11554

5. Kaplan Equities
   10 S Middle Neck Road, Great Neck, NY 11021

6. JMS Architect and Planner PC
   100 Paddington Circle, Smithtown NY 11787

7. Strathmore Communities
   100 Schoolhouse Road, Levittown NY 11756

8. D & F Group
   100 Schoolhouse Road, Levittown NY 11756

9. D & F Construction Group, Inc.
   20001 Marcus Avenue, Lake Success, NY 11042

10. Timber Ridge Homes
    100 Adams Avenue, Hauppauge, NY 11788

11. Timber Ridge Homes
    100 Adams Avenue, Hauppauge, NY 11788

12. The Buzzuto Group
    6406 Ivy Lane Suite 700, Greenbelt, MD 2077

13. Woolworth Revitalization LLC
    128 East Main Street, Riverhead, NY 11901

14. Domus Group LLC
    215 Hallock Road, Stony Brook, NY 11790

15. Lalezarian Developers
    1999 Marcus Avenue, New Hyde Park, NY 11042

16. Tritec Development Group
    45 Research Way, East Setauket, NY 11733-6401

17. Avalon Bay Communities
    135 Pinelawn Road, Melville, NY 11747

18. Albanese Organization Inc.
    1050 Franklin Avenue Suite 200, Garden City, NY 11530

19. The Beechwood Organization
    200 Robbins Lane Suite D, Jericho, NY 11753

20. Long Island Builders Institute
    1757-8 Veterans Memorial Highway, Islandia, NY 11749

21. Long Island Home Builders Care, Inc.
    1757-8 Veterans Memorial Highway, Islandia, NY 11749

22. New York State Association for Affordable Housing
    242 W 36th Street, 3rd Floor, New York, NY 10018

23. Community Development Corporation of Long Island
    2100 Middle Country Rd #300, Centereach, NY 11720

24. Long Island Housing Partnership
    180 Oser Avenue, Suite 800, Hauppauge, NY 11788

25. Community Housing Innovations
    55 Medford Avenue, Suite B, Patchogue, NY 11772