Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 1 of 25 PageID #: 1031
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 1 of 25 PageID #: 1006
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 1 of 25 PageID #: 981

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LONG ISLAND HOUSING SERVICES,
INC. and FAIR HOUSING JUSTICE
CENTER, INC.,

                      Plaintiffs,

    v.

NASSAU COUNTY INDUSTRIAL
DEVELOPMENT AGENCY,

                      Defendant.

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    OCT 15 2016    ★

LONG ISLAND OFFICE

No. 14-CV-3307(ADS)(AKT)

**STIPULATED SETTLEMENT
AGREEMENT AND ORDER**

**WHEREAS,** plaintiffs Long Island Housing Services, Inc. and Fair Housing Justice Center, Inc. (each a "Plaintiff," and together the "Plaintiffs") commenced an action in the United States District Court for the Eastern District of New York, Civil Action No. 14-3307 (ADS) (AKT) entitled *Long Island Housing Services, Inc. and Fair Housing Justice Center, Inc. v. Nassau County Industrial Development Agency* (the "Action") against defendant Nassau County Industrial Development Agency ("NCIDA"); and

**WHEREAS,** Plaintiffs alleged, *inter alia*, that NCIDA's provision of financial assistance to a to-be constructed residential apartment building located at 255 Great Neck Road in the Village of Great Neck Plaza violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* and state and local fair housing and human rights laws; and

**WHEREAS,** NCIDA filed an answer ("Answer") to Plaintiffs' first complaint (the "Complaint") in which NCIDA denied the material allegations in the Complaint; and

**WHEREAS,** Plaintiffs also asserted claims against the Village of Great Neck Plaza (the "Village"), alleging that the Village's enactment, enforcement, and application of certain provisions within Section 225 of the Village Code constituted unlawful

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 2 of 25 PageID #: 1032
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 2 of 25 PageID #: 1007

Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 2 of 25 PageID #: 982

discrimination on the basis of race, age, and disability in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* and state and local fair housing laws; and

WHEREAS, Plaintiffs resolved their claims against the Village by a consent decree, so-ordered by the District Court on October 1, 2015 (the "Consent Decree"), the terms of which are independent of the terms and conditions herein and no contrary inference shall be made herein; and

WHEREAS, NCIDA moved for judgment on the pleadings against the Complaint, and in response to said motion Plaintiffs amended their Complaint to withdraw claims alleging disparate impact liability (the "Amended Complaint"); and

WHEREAS, NCIDA moved to dismiss the Amended Complaint, which motion the District Court denied without prejudice to refile in the event the parties were unable to reach a settlement agreement; and

WHEREAS, NCIDA denies any wrongdoing, does not admit the allegations in the Amended Complaint, and contends that Plaintiffs' claims against NCIDA are frivolous and vexatious; and

WHEREAS, NCIDA fairly evaluates all applications for financial assistance that applicants for such financial assistance bring before it, but has no affirmative duty or obligation to make financial assistance available for housing projects; and

WHEREAS, each Party believes that it is likely to prevail on the merits of the claims set forth in the Amended Complaint; and

WHEREAS, in order to avoid further litigation, Plaintiffs and NCIDA (each a "Party", and collectively, the "Parties") wish to settle and resolve all claims, defenses, and controversies which have been, or could have been, asserted by the Parties in the Action.

- 2 -

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 3 of 25 PageID #: 1033
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 3 of 25 PageID #: 1008
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 3 of 25 PageID #: 983

NOW THEREFORE, in consideration of the respective representations, covenants, agreements, warranties and conditions herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

I.    GENERAL TERMS

1.    **Term of Agreement.**  All obligations under this Stipulated Settlement Agreement and Order ("Agreement"), unless otherwise specified, shall commence on the date this Agreement is "So Ordered" by the Court and shall continue for a period of five (5) years from that date.

2.    **Stipulation of Dismissal.**  Plaintiffs and NCIDA shall cause their counsel to execute a Stipulation of Dismissal with prejudice in the form attached hereto as **Exhibit "A"** and shall take all necessary steps to obtain dismissal of the Action.  Within five (5) business days after the later of (1) execution of this Agreement and (2) payment of the Settlement Sum (as defined in Section II(1) below), the Parties shall file the Stipulation of Dismissal with the Court.  The settlement of the Action is contingent on the Court ordering that all claims are dismissed with prejudice as to NCIDA.

3.    **General Release.**  The Parties, on behalf of themselves and each of their officers, directors, stockholders, agents, attorneys, affiliates, successors, and insurers, and assigns of any of the foregoing, and any person claiming by, through or under them, hereby forever irrevocably and unconditionally release, remise and discharge one another and each of their respective officers, board members, employees, agents, representatives, attorneys, and insurers from any and all claims or demands of whatsoever nature existing at the time this Agreement is executed, including, without limiting the generality of the

- 3 -

foregoing, any claims brought or which could have been brought in the Action, any and all manner of actions, causes of action, suits, debts, dues, sums of money, accounts, contracts, claims, third-party claims, cross-claims, counterclaims, demands, agreements, controversies, judgments, damages, liabilities, promises, variances, reckonings, bonds, bills, specialties, covenants, liens, encumbrances, trespasses, leases, subordinations, security interests, duties and obligations of any nature whatsoever, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether direct, indirect or derivative, whether or not the same are based upon violation of any law or regulation, or otherwise in law, admiralty, equity or bankruptcy, which any of the Parties ever jointly or individually had or now has against any of the other Parties or their respective officers, board members, employees, agents, representatives, attorneys, and insurers, for, on or by reason of any matter, cause or thing whatsoever arising or occurring from the beginning of the world through the date of this Agreement, including, without limitation, any causes or effect which existed or occurred, or presently exists, as a result of any act, transaction, practice, conduct or omission of any of the Parties that occurred prior to the date hereof, except that this release shall not apply to the rights and obligations created by this Agreement. This release shall be construed in the broadest possible sense.

4. **General Release to Include Unknown Claims.** The Parties hereby agree, represent and warrant that they realize and acknowledge that known and unknown facts may have occurred that may have given or may hereafter give rise to claims which are presently unknown, unanticipated and unsuspected, and further agree, represent and warrant that this Agreement has been negotiated and agreed upon in light of that realization

- 4 -

Case 2:14-cv-03307-ADS-AKT Document 115 Filed 10/15/16 Page 5 of 25 PageID #: 1035
Case 2:14-cv-03307-ADS-AKT Document 115 Filed 10/15/16 Page 5 of 25 PageID #: 1010
Case 2:14-cv-03307-ADS-AKT Document 114-1 Filed 10/14/16 Page 5 of 25 PageID #: 985

and that they nevertheless hereby intend to release, discharge and acquit the other Parties
from any such claim.

## II.    TERMS OF SETTLEMENT

      **1.    Payment.** In consideration for this Agreement, and in full and final
satisfaction of Plaintiffs' claims, NCIDA will pay or cause to be paid to Plaintiffs the total
sum of One Hundred Fifty Thousand dollars ($150,000.00) (the "Settlement Sum"). The
Settlement Sum shall be paid within thirty (30) days after execution of this Agreement.
Payment shall be made to "Emery Celli Brinckerhoff & Abady LLP, as attorneys" to
Plaintiffs. Such payment shall be in full settlement of all claims by Plaintiffs against
NCIDA for damages, attorneys' fees, and costs of any kind, including but not limited to
compensatory damages, punitive damages, "diversion of resources" damages, "frustration
of mission" damages, and testing expenses. NCIDA represents that no tax dollars will be
used to pay the Settlement Sum.

      **2.    Continued Compliance with Fair Housing Laws.** NCIDA believes
that it has complied with all applicable fair housing laws and will continue to comply with
all fair housing laws, including the Fair Housing Act, the New York State Human Rights
Law, the Nassau County Human Rights Law, and other applicable local, state, and federal
laws prohibiting housing discrimination, in each case to the extent applicable and in each
case, the applicable law shall mean the law or laws in effect as of the date the Agency
receives an application for financial assistance.. NCIDA does not by this Agreement
assume any new or affirmative duties under fair housing laws beyond NCIDA's existing
obligations under the law.

- 5 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 6 of 25 PageID #: 1036
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 6 of 25 PageID #: 1011

Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 6 of 25 PageID #: 986

3.     **Non-Retaliation.**  NCIDA will take no action to retaliate against

Plaintiffs for filing the Action or for otherwise aiding or encouraging any other person in the

exercise or enjoyment of any right protected by federal or state fair housing laws.

4.     **Agency Policies.**  NCIDA will adopt the following internal policies

and procedures:

(a)     NCIDA will maintain an "Affordable Housing" page on its
website, on which it will publish the following documents for all
proposed projects with an affordable housing component: (i)
Applications for Financial Assistance (including marketing plans),
(ii) notices of public hearings, (iii) public hearing minutes, (iv)
notices of deviation from the NCIDA Uniform Tax Exemption
Policy, and (v) key "final deal documents," said term to include
leases, regulatory agreements, and PILOT agreements to the extent
such documents are not exempt from disclosure.  NCIDA will
independently develop a means by which to highlight the
publication of new project documents for affordable housing
projects on the front page of its website and/or to automatically
notify the public when new documents are posted to the website.

(b)     NCIDA agrees to provide Plaintiffs, upon written request, with
copies of NCIDA staff reports concerning proposed projects with
an affordable housing component, to the extent such staff reports
are not exempt from disclosure pursuant to the New York
Freedom of Information Law, New York Public Officers Law § 84,
*et seq.* or other applicable law, rule or regulation.  Plaintiffs agree to
keep such reports confidential.

(c)     NCIDA will revise its Application for Financial Assistance forms
so as to elicit whether a proposed project proposes the creation of
housing and, if so, require the applicant to adopt a Fair
Housing/Equal Housing Opportunity Policy as set forth in Section
II(5)(a), and to make the certifications set forth in Section II(5)(b) –
(e) herein.

(d)     NCIDA will revise the "Non-Discrimination" section of its
Regulatory and Lease/Sublease Agreements for housing projects to
incorporate by reference the Fair Housing/Equal Housing
Opportunity Policy each applicant will be required to adopt, and to
reference all protected classes under the Fair Housing Act, New
York Human Rights Law, and Nassau County Human Rights
Law.

- 6 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 7 of 25 PageID #: 1037
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 7 of 25 PageID #: 1012
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 7 of 25 PageID #: 987

(e)    NCIDA agrees not to require applicants proposing affordable housing projects to expand income-eligibility for housing to households with area median income (AMI) higher than that proposed by the developer and consistent with the local jurisdiction's requirements for affordable housing, if any.

(f)    NCIDA will conduct outreach and marketing to affordable housing developers regarding financial assistance opportunities available through NCIDA by:

    (i)    Publishing information about available financial assistance for affordable housing development on NCIDA's website;

    (ii)    Notifying local governments in Nassau County in writing (with a copy to Long Island Housing Services) on an annual basis about the availability of NCIDA's financial assistance for affordable housing projects;

    (iii)    Mailing an annual informational letter to companies that have registered with NCIDA to be included on NCIDA mailing list. NCIDA shall post steps to complete the registration process on its website. and

    (iv)    Informing the Long Island Builders Institute, Long Island Housing Partnership, and the Nassau County Office of Housing and Intergovernmental Affairs that NCIDA is willing and available as needed to participate in meetings to educate affordable housing developers about available NCIDA assistance for eligible housing projects.

(g)    NCIDA will procure fair housing training to be administered to NCIDA's Board members, Executive Director, Administrative Director, and Director of Business Development within one hundred eighty (180) days of the date of this Agreement. NCIDA will retain the lowest-cost qualified trainer to conduct the training, consistent with NCIDA's procurement policies, NCIDA criteria, and New York State law. NCIDA agrees to provide notice to Plaintiffs of any solicitation or request by NCIDA for bids or proposals from potential trainers so as to permit Plaintiffs to distribute such requests to potential bidders. Notice will be provided by e-mail to Plaintiffs on the same day the request is made public by NCIDA. NCIDA also agrees to notify Plaintiffs of the identity of the trainer it ultimately selects and to provide Plaintiffs with a copy of the trainer's training curriculum for NCIDA at least ten (10) days in advance of the training, and to provide Plaintiffs with a list of attendees and copies of any materials used in the training within thirty (30) days after the

- 7 -

Case 2:14-cv-03307-ADS-AKT Document 115 Filed 10/15/16 Page 8 of 25 PageID #: 1038
Case 2:14-cv-03307-ADS-AKT Document 115 Filed 10/15/16 Page 8 of 25 PageID #: 1013
Case 2:14-cv-03307-ADS-AKT Document 114-1 Filed 10/14/16 Page 8 of 25 PageID #: 988

training is completed. If NCIDA determines that it has not received any qualified training proposals in response to its procurement notice, it will notify the Plaintiffs within ten (10) days of its determination. In such event, the Parties agree to discuss in good faith alternative criteria to use in order to enable NCIDA to procure fair housing training.

5.    **Obligations to be Imposed on Agency Applicants.** NCIDA will require developers applying for Agency financial assistance for housing projects to self-certify their compliance with fair housing laws and conduct fair-housing training as follows:

      (a)    NCIDA will require applicants applying for NCIDA financial assistance for any housing project to self-certify in the Application that they have adopted a Fair Housing/Equal Housing Opportunity Policy substantially in the form attached hereto as **Exhibit "B."**

      (b)    NCIDA will require applicants applying for NCIDA financial assistance for any housing project to self-certify in the Application applying for NCIDA financial assistance and to covenant in the final Regulatory Agreement that the proposed project complies with applicable fair housing laws and that eligibility criteria for housing in any part of the project will not include any residency requirements or preferences, including durational ones, age restrictions (unless for senior housing permitted by law), or other discriminatory criteria.

      (c)    NCIDA will require applicants applying for NCIDA financial assistance for any housing project to self-certify in the Application applying for NCIDA financial assistance and to covenant in the final Regulatory Agreement that:

            (i)    they have adopted a Fair Housing/Equal Housing Opportunity Policy, as required by Section II(5)(a);

            (ii)    they have posted their Fair Housing/Equal Housing Opportunity Policy publicly; and

            (iii)    they will display fair housing law posters for consumers in their rental or sales offices, in a form substantially similar to the model fair housing posters attached hereto as **Exhibit "C."** NCIDA will provide developers with fair housing law posters for display upon request by a developer.

- 8 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 9 of 25 PageID #: 1039
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 9 of 25 PageID #: 1014

Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 9 of 25 PageID #: 989

(d)    NCIDA will require applicants applying for NCIDA financial assistance for any housing project to self-certify in the Application applying for NCIDA financial assistance and to covenant in the final Regulatory Agreement that:

    (i)    they have adopted a non-discriminatory affirmative marketing plan that meets the criteria set forth in **Exhibit D**; and

    (ii)    they will submit such marketing plans in writing prior to closing. Such marketing plans will be posted publicly by NCIDA along with the Application for Financial Assistance and final deal documents as required by Section II(4)(a).

(e)    NCIDA will require applicants applying for NCIDA financial assistance for any housing project to self-certify in the Application applying for NCIDA financial assistance that key employees in charge of marketing and rental of the project have completed (or will complete within one year of execution of a Regulatory Agreement) four hours of fair housing training provided by Long Island Housing Services ("LIHS"). LIHS agrees to provide fair housing training to recipients of financial assistance for the construction or rehabilitation of housing from NCIDA at reasonably acceptable times and locations at least once a year for five years after this Agreement is executed at no additional cost to the recipients or NCIDA, it being understood that the consideration paid by NCIDA for this Agreement will fully compensate LIHS for its training services. In the event LIHS declines to provide or make available reasonably acceptable no-cost fair housing training, the provisions of this Section II(5)(e) shall cease to be of any force and effect.

(f)    NCIDA will not be obliged to enforce the requirements set forth in Section II(5)(a) – (e) beyond (1) requiring applicants to so self-certify and (2) including the applicable provisions in any Regulatory Agreement. NCIDA will not be obliged to independently investigate the veracity of an applicant's self-certification or to enforce an applicant's adherence to its affirmative marketing plan.

**6.    Waiver of Application Fees.** NCIDA agrees to waive its application fee for any proposed project in the Village of Great Neck Plaza that would create "replacement units," (as defined in Paragraph 15 of the Plaintiffs' Consent Decree with the Village of Great Neck Plaza). This provision will expire upon the earlier of (a) the

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 10 of 25 PageID #: 1040
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 10 of 25 PageID #: 1015
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 10 of 25 PageID #: 990

termination of this Agreement for any reason, or (b) the issuance of certificates of occupancy for five such "replacement units" beyond the 14 required by such Consent Decree.

## III.   ADDITIONAL TERMS

**1.**   **No Admission of Liability.**  It is agreed and understood by Plaintiffs and their counsel of record that this Agreement and any payment by NCIDA do not amount to an admission of any kind of liability or responsibility by NCIDA or persons acting on its behalf, such liability being expressly denied, but represents a full compromise and settlement of any and all past and present claims to avoid the costs and burdens of litigation.

**2.**   **Confidentiality.**  The existence and terms of this Agreement are not confidential, however the Parties each represent and agree that they and their attorneys will keep the negotiation of this Agreement and associated discussions confidential. The Parties agree to the following terms and agree to instruct their counsel of record or anyone acting at their direction: they shall not: a) make or publish or cause to be made or published, any statement that misrepresents the terms of this Agreement; b) issue a press release regarding this Agreement; and c) for thirty (30) days following the date the Agreement is so-ordered by the Court, initiate or seek any contact with members of the press or media.  This paragraph is intended by the Parties to be part of the consideration for the Release.

**3.**   **Voluntary Execution.**  This Agreement has in all respects been voluntarily and knowingly executed by the Parties on advice and with approval of their respective legal counsel.

- 10 -

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 11 of 25 PageID #: 1041
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 11 of 25 PageID #: 1016
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 11 of 25 PageID #: 991

4.     **Binding Agreement.** This Agreement shall be binding on the Parties and their respective successors, affiliates, representatives, and assigns, subject to the modification provisions contained herein.

5.     **Notices.**

All notices under this Agreement shall be sent by e-mail and U.S. Mail to the following, unless written notice of a change in address is provided to all the Parties:

To NCIDA:

Joseph J. Kearney, Executive Director
Nassau County Industrial Development Agency
1550 Franklin Avenue, Suite 235
Mineola, New York 11501
Tel: (516) 571-1945
Fax: (516) 571-1076
e-mail: jkearney@nassauida.org

Alan J. Bozer, Esq.
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
Tel: (716) 504-5700
email: abozer@phillipslytle.com

To LIHS:

Michelle Santantonio, Executive Director
Long Island Housing Services, Inc.
640 Johnson Avenue, Suite 8
Bohemia, New York, 11716
Tel.: 631-567-5111 ext. 316
Fax: 631-567-0160
E-mail: michelle@lifairhousing.org

- 11 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 12 of 25 PageID #: 1042
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 12 of 25 PageID #: 1017
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 12 of 25 PageID #: 992

To FHJC:
Fred Freiberg, Executive Director
Fair Housing Justice Center, Inc.
5 Hanover Square, 17th Floor
New York, NY 10004
Tel.: 212-400-8231
Fax: 212-400-8203
E-mail: ffreiberg@fairhousingjustice.org

**6. Notice and Opportunity to Cure; Dispute Resolution.** If either Party breaches its obligations under this Agreement, the non-breaching Party shall give the breaching Party written notice of such alleged breach, and the opportunity to cure such breach. To that end, the Parties agree to confer within thirty (30) days of the notice of breach to reach a resolution of the alleged breach and a timetable to implement such resolution. If the Parties are unable to informally resolve the alleged breach within such thirty (30) days, the non-breaching Party shall give written notice of an impasse and the breaching Party shall have an additional thirty (30) business days after delivery of such notice to cure. If the breaching Party fails to cure such alleged breach after said additional time period, then the non-breaching Party may file a pre-motion letter with the Court detailing the alleged breach and requesting that the Court schedule a pre-motion conference to resolve the dispute. No party may file a motion with the Court to enforce the terms of this Agreement unless the Court either directs the filing of a motion following a pre-motion conference or the Court declines to grant a pre-motion conference.

**7. Choice of Law and Venue.** This Agreement, and any rights, remedies or obligations provided for hereunder, shall be interpreted, construed and enforced in accordance with federal law where applicable, and otherwise in accordance with the laws of the State of New York. The United States District Court for the Eastern District of New

- 12 -

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 13 of 25 PageID #: 1043
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 13 of 25 PageID #: 1018
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 13 of 25 PageID #: 993

York will retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion, subject to the dispute resolution procedures in Paragraph III(6) herein.

**8. Attorneys' Fees.** Notwithstanding any statute, rule, or regulation that permits a prevailing party to recover its attorneys' fees and/or costs from another party, no Party to this Agreement shall be entitled to an award of attorneys' fees or costs on any letter, pre-motion submission, motion, application, or other proceeding or activity related to or arising under this Agreement.

**9.    Joint Drafting.** This Agreement shall be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

**10.    Entire Agreement.** This Agreement shall constitute the entire agreement among the Parties hereto with respect to the subject matter of this Agreement and supersedes and replaces all prior negotiations, proposed agreements, stipulations, consent orders, and agreements, whether written or unwritten, concerning such subject matter.

**11.    Modification.** No amendments, changes, supplements or revisions to this Agreement shall be effective unless in writing and signed by all Parties.

**12.    No Assignment of Claims.** Other than as stated herein, the Plaintiffs represent and warrant that they have not assigned, transferred, pledged or hypothecated, or purported to assign, transfer or hypothecate, to any person, entity or individual, any of the claims, demands, causes of action, obligations, damages, attorneys' fees, costs and liabilities released pursuant to this Agreement.

- 13 -

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 14 of 25 PageID #: 1044
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 14 of 25 PageID #: 1019
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 14 of 25 PageID #: 994

13.     **Severability.** If any provision in this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, it is mutually agreed that this Agreement will endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision will materially affect the intent of this Agreement. The Parties will consult and use their best efforts to agree upon a valid and enforceable provision that will be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

14.     **Capacity.** The Parties each warrant that they have full power, capacity and authority to execute this Agreement on behalf of the Party so indicated.

15.     **Review by the Parties.** The Parties each warrant that they have read the terms of this Agreement and have had the opportunity to have the terms used herein and consequences thereof explained by their attorney prior to signing.

16.     **Survival.** All representations, warranties and releases set forth in this Agreement shall be deemed continuing and shall survive the execution date of this Agreement.

17.     **Section Headings.** The section headings contained in this Agreement are for the Parties' convenience only and shall not affect the meaning or interpretation of this Agreement.

18.     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which will be deemed an original, and all of which taken together shall constitute one and the same instrument. For purposes of executing or amending this Agreement, a document signed and transmitted by facsimile or email will be treated as an original and will have the same binding legal effect as an original signature.

- 14 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 15 of 25 PageID #: 1045
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 15 of 25 PageID #: 1020
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 15 of 25 PageID #: 995

IN WITNESS WHEREOF, the Parties, by their attorneys, have executed this

Agreement on the day and year set forth beneath their signatures below.


EMERY CELLI BRINCKERHOFF &
ABADY LLP

By: _Diane L. Houk_
    Diane L. Houk, Esq.
    David Lebowitz, Esq.
*Attorneys for Plaintiffs*
600 Fifth Avenue, 10th Floor
New York, New York 10020
Tel. (212) 763-5000
dhouk@ecbalaw.com
dlebowitz@ecbalaw.com

Dated: September 30, 2016

PHILLIPS LYTLE LLP

By: _____
    Allan J. Bozer, Esq.
    Ryan A. Lema, Esq.
*Attorneys for Defendant*
620 Eighth Avenue, 23rd Floor
New York, New York 10018
Tel. (212) 759-4888
abozer@phillipslytle.com
rlema@phillipslytle.com

Dated: September 30, 2016


CARROLL MCNULTY & KULL LLC

By: _____
    Joseph P. McNulty, Esq.
    Robert Seigal, Esq.
*Attorneys for Defendant*
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel. (646) 625-4000
jmcnulty@cmk.com
rseigal@cmk.com

Dated: September 30, 2016

- 15 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 16 of 25 PageID #: 1046
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 16 of 25 PageID #: 1021
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 16 of 25 PageID #: 996

LONG ISLAND HOUSING SERVICES, INC.

By: _Michelle Santantonio_

Name:_____Michelle Santantonio____

Title:_____Executive Director____

Date:____10/5/16____

FAIR HOUSING JUSTICE CENTER, INC.

By: _____

Name:_____Gene Capello____

Title:_____President____

Date:_____

NASSAU COUNTY INDUSTRIAL DEVELOPMENT AGENCY

By: _____

Name:_Joseph J. Kearney____

Title:__Executive Director____

Date:_____

_____

SO ORDERED:

s/ Arthur D. Spatt

_____•_____

USDJ    10/15/16

- 16 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 17 of 25 PageID #: 1047
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 17 of 25 PageID #: 1022
FROM Case 2:14-cv-03307-ADS-AKT   Document 114-1 49-1 Filed 10/14/16   Page 17 of 25 PageID #: 907

LONG ISLAND HOUSING SERVICES, INC.

By: _____

Name:_____Michelle Santantonio_____

Title:_____Executive Director_____

Date:_____

FAIR HOUSING JUSTICE CENTER, INC.

By: _Gene l Capello_____

Name:_____Gene Capello_____

Title:_____President_____

Date:_October 5, 2016_____

NASSAU COUNTY INDUSTRIAL DEVELOPMENT AGENCY

By: _____

Name:_Joseph J. Kearney_____

Title:__Executive Director_____

Date:_____

_____

SO ORDERED:

_____

- 16 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 18 of 25 PageID #: 1048
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 18 of 25 PageID #: 1023
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 18 of 25 PageID #: 998

**LONG ISLAND HOUSING SERVICES, INC.**

By: _____

Name: _____ Michelle Santantonio _____

Title: _____ Executive Director _____

Date: _____

**FAIR HOUSING JUSTICE CENTER, INC.**

By: _____

Name: _____ Gene Capello _____

Title: _____ President _____

Date: _____

**NASSAU COUNTY INDUSTRIAL DEVELOPMENT AGENCY**

By: _____

Name: Joseph J. Kearney _____

Title: _____ Executive Director _____

Date: 10/12/16 _____

_____

**SO ORDERED:**

_____

- 16 -

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 19 of 25 PageID #: 1049
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 19 of 25 PageID #: 1024
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 19 of 25 PageID #: 999

## EXHIBIT A

### Stipulation of Dismissal

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LONG ISLAND HOUSING SERVICES, INC. and
FAIR HOUSING JUSTICE CENTER, INC.,

          Plaintiffs,

    v.

NASSAU COUNTY INDUSTRIAL DEVELOPMENT
AGENCY,

          Defendant.

**STIPULATION OF
DISMISSAL**

Civil Action No.:
14 Civ. 3307

---

        IT IS HEREBY STIPULATED AND AGREED, by and among the

undersigned attorneys for all the parties hereto, that this case is hereby dismissed in its

entirety with prejudice and without costs or fees to any party.  The Court shall retain

jurisdiction over this case for the sole purpose of enforcing the Stipulated Settlement

Agreement and Order.

Dated:  New York, New York
       October ___, 2016

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By: _____
     Diane L. Houk, Esq.
     David Lebowitz, Esq.
*Attorneys for Plaintiffs*
600 Fifth Avenue, 10th Floor
New York, New York 10020
Tel. (212) 763-5000
dhouk@ecbalaw.com
dlebowitz@ecbalaw.com

- 17 -

Dated:  Buffalo, New York              PHILLIPS LYTLE LLP
        October \_\_\_, 2016


By: _____
    Alan J. Bozer, Esq.
    Ryan A. Lema, Esq.
*Attorneys for Defendant*
620 Eighth Avenue, 23rd Floor
New York, New York 10018
Tel. (212) 759-4888
abozer@phillipslytle.com
rlema@phillipslytle.com


Dated:  New York, New York      CARROLL MCNULTY & KULL LLC
        October \_\_\_, 2016


By: _____
    Joseph P. McNulty, Esq.
    Robert Seigal, Esq.
*Attorneys for Plaintiffs*
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel. (646) 625-4000
jmcnulty@cmk.com
rseigal@cmk.com


_____


**SO ORDERED:**


_____

- 18 -

Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 21 of 25 PageID #: 1051
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 21 of 25 PageID #: 1026
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 21 of 25 PageID #: 1001

## EXHIBIT B

### Fair Housing/Equal Housing Opportunity Policy to be adopted by Agency Applicants

As part of our continuing effort to ensure compliance with federal, state, and local anti-discrimination laws, we would like to take this opportunity to remind you of our policies regarding equal housing opportunity. It is important for all employees to review his or her own actions in light of these requirements and for everyone to keep in mind the importance of treating all persons equally.

It is the policy and practice of this company not to engage in or assist the efforts of others to engage in housing discrimination. Consistent with that policy, we remind you that the antidiscrimination laws of the United States, New York State, and local laws are quite specific in the area of housing, and in conformance with those laws, you must not engage in any of the following conduct during the course of your work for this company:

1. Refuse to show, rent, sell, negotiate for the rental or sale of, or otherwise make unavailable or deny, housing to any person because of race, color, religion, creed, sex/gender, familial status (having or expecting a child under 18), national origin, ethnicity, disability, marital status, age, sexual orientation, military status, source of income or status as survivor of domestic violence (each a "prohibited basis");

2. Discriminate against any person in the terms, conditions or privileges of a rental or sale or in the provision of services or facilities in connection therewith because of a prohibited basis;

3. Make any verbal or written statement with respect to the rental or sale of housing that indicates any preference, limitation or discrimination concerning a prohibited basis, or any statement indicating an intention to make any such preference, limitation or discrimination;

4. Represent to any person because of a prohibited basis that any housing or unit is not available for inspection, rental or sale when such apartment is in fact so available;

5. Steer persons into or away from certain areas of a building, development or neighborhood because of a prohibited basis;

6. Refuse to provide a reasonable accommodation in rules, policies, practices or services for tenants, buyers, or applicants with disabilities; and

7. Refuse to allow a reasonable modification to individual units or common areas for tenants, buyers, or applicants with disabilities.

We are firmly committed to the goal of fair housing. You should understand that any violation of this Equal Housing Opportunity Policy will lead to discipline, up to and including discharge.

- 19 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 22 of 25 PageID #: 1052
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 22 of 25 PageID #: 1027
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 22 of 25 PageID #: 1002

## EXHIBIT C

### Sample Fair Housing Posters

U. S. Department of Housing and Urban Development





EQUAL HOUSING
OPPORTUNITY

**We Do Business in Accordance With the Federal Fair Housing Law**

(The Fair Housing Amendments Act of 1988)

---

### It is illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin

---

- ◼ In the sale or rental of housing or residential lots
- ◼ In advertising the sale or rental of housing
- ◼ In the financing of housing

- ◼ In the provision of real estate brokerage services
- ◼ In the appraisal of housing
- ◼ Blockbusting is also illegal

---

Anyone who feels he or she has been
discriminated against may file a complaint of
housing discrimination:
   1-800-669-9777 (Toll Free)
   1-800-927-9275 (TTY)
   www.hud.gov/fairhousing

U.S. Department of Housing and
Urban Development
Assistant Secretary for Fair Housing and
Equal Opportunity
Washington, D.C. 20410

Previous editions are obsolete

form HUD-928.1 (8/2011)

- 20 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 23 of 25 PageID #: 1053
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 23 of 25 PageID #: 1028
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 23 of 25 PageID #: 1003

# HOUSING DISCRIMINATION IS SOMETIMES **BLATANT**, SOMETIMES , BUT ALWAYS UNLAWFUL.



Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 24 of 25 PageID #: 1054
Case 2:14-cv-03307-ADS-AKT  Document 115  Filed 10/15/16  Page 24 of 25 PageID #: 1029
Case 2:14-cv-03307-ADS-AKT  Document 114-1  Filed 10/14/16  Page 24 of 25 PageID #: 1004

## EXHIBIT D
### Requirements for Affirmative Marketing Plans

Affirmative marketing plans submitted by NCIDA applicants shall be required only

for affordable or "workforce" units and shall contain the following information:

1. Street address, village, town, zip code, and census tract number for the project;

2. Number of affordable units to be marketed and whether they will be available for rent or purchase;

3. The number, if any, and location of market rate units included in the project;

4. Whether the housing will be "housing for older persons", defined as at least 80% occupancy of units with at least one person 55 or older or 100% occupancy of persons age 62 or older;

5. A description of how units will be advertised for sale or rental prior to first occupancy, including whether applicant will utilize its own website, commercial websites, print media outlets, social media outlets such as Facebook, a sign at the project site, mailings, leaflets/flyers, brochures, and other forms of advertising;

6. A statement that applicant will use fair housing logo or phrase "Equal Housing Opportunity" on all advertising described above;

7. A statement that the applicant will distribute written information regarding the availability of affordable units at the project to a list of organizations provided to the NCIDA by the Plaintiffs, which list may be updated annually;

8. Whether the applicant will conduct the marketing and initial rent-up or sales itself or contract with a third-party;

9. A statement that an initial application period with a specific start and end date will be utilized for accepting applications for consideration for the initial rental of the units and that the period will last for at least thirty (30) days after the marketing described in this plan is commenced. In addition, a statement that following the initial application period, all the applications submitted during the initial application period will be considered through the use of a lottery and not on a first-come first-served basis, unless the number of applications received during the initial

- 22 -

Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 25 of 25 PageID #: 1055
Case 2:14-cv-03307-ADS-AKT   Document 115   Filed 10/15/16   Page 25 of 25 PageID #: 1030
Case 2:14-cv-03307-ADS-AKT   Document 114-1   Filed 10/14/16   Page 25 of 25 PageID #: 1005

application period is less than the total number of units available for rental.

10.   A statement that the applicant will maintain records of the activities it undertakes to implement its marketing plan.